Mr. Ross, how's it going over there in the state trial court? What's happening there today? I think they're selecting a jury, Your Honor. You think they are? I'm pretty sure they are. You're not in contact with what's going on? I am in contact. I didn't go over there myself today, but the report that I got is they're selecting a jury and they're probably going to open on Friday or possibly the beginning of next week. And, Mr. Ross, what is the status of the court's procedure or limiting rules or whatever about the disclaimer by plaintiffs as far as what can be offered at trial concerning Mr. Hayden's alleged exposure during the Navy? Your Honor, I'm not aware of the court putting any rules in place yet on what can be said about— What do you mean, you're not aware of? Don't you represent the Crane Company in this trial that started today? That's right. So why aren't you aware? I just don't know that she's done anything. I know that it's going to be raised— Well, she either has or hasn't. Your counsel, you don't know that? I'm not sure, Your Honor. I can't say with certainty. Are you going to participate in the trial? No, Your Honor. So what has Crane Company urged to the State trial judge about how to handle this disclaimer? That the plaintiff should not be permitted to make any type of claim for liability against Crane Co. based on the Navy exposures. And is there any allegation in the complaint against Crane Company other than exposure during — while in the Navy? Yes, Your Honor. What is the other claimed exposure? Mr. Hayden claims to have encountered Crane Co. equipment while working during a civilian career after he got out of the Navy. And that's what plaintiffs claim they're going to proceed on against Crane Co. at trial. So Your Honors, if I may jump into a few points I'd like to make. I think that very recently this Court decided an appeal that in many ways is similar to this one, and that's the Zeringue Appeal. In the Zeringue Appeal, this Court held that Crane Co. could assert a colorable federal defense and otherwise satisfy the requirements of 28 U.S.C. 1442a1 in a claim that, like this one, involved allegations that a plaintiff encountered Crane Co. valves and asbestos materials the Navy used with them while serving on a Navy warship. The theories of liability that are asserted in the cross-claim against Crane Co. here, design defect, failure to warn, are the same that were asserted in the Zeringue case. The averments and evidence Crane Co. provided in support of its federal defense, the government contractor defense in Zeringue, it's the same stuff we're providing here. I think the only distinction here from Zeringue is that in Zeringue, the claim that gave rise to Crane Co.'s federal defense was the plaintiff's claim. And as Judge Bartsdale alluded to earlier, here it's a cross-claim that was filed by a defendant, American Cyanamid Corporation. Now, I think this appeal boils down largely to the question, does that make a difference? And we suggest it does not. I don't think there's a dispute that as a general matter, an action can be removed to federal court under 1442 if a cross-claim or a third-party claim gives rise to a federal defense. Well, here we've got the disclosure. That's what the district judge was going to do. Let me finish, and I'll let you talk. I'm sorry, Your Honor. I'm sorry, Your Honor, that the district judge felt that this disclaimer was a sufficient limitation on being able to have contribution against Crane for exposure while in the Navy and said that if plaintiff attempts to bring this back in, attempts to sidestep its disclaimer, you can seek removal right then. So I'm wondering why Crane is so unconfident about judicial estoppel and plaintiff not being able to present evidence of exposure in the Navy from Crane by Mr. Hayden's, the decedent's estate. Judge, it's not that we're worried that the plaintiff is going to present that evidence. I understand. You're worried American Cyanamid is. Exactly. Now, certainly, American Cyanamid can say, look, they're blaming me. I didn't do it. He got it while he was in the Navy. Of course, American Cyanamid can do that. But hasn't the judge or isn't Crane pushing for some sort of limitation for the jury to consider when it reaches its verdict along that line that even if you find there was exposure in the Navy, you can't hold Crane liable? Well, we may argue that, Your Honor, but I — You haven't sought to get a ruling from the judge at this pre-trial conference that was held about a month ago? No, Your Honor. We think this is a valid cross-claim. I mean, we're going to have to defend it on the merits. And that's our position, that this has never been dismissed. American Cyanamid filed it after obtaining leave to file it. Has Crane sought to have it dismissed in trial court? No. Why not? It raises a factual dispute. I mean, American Cyanamid is saying that the exposures that Mr. Hayden had in the No, they're saying they caused his — American Cyanamid is saying Crane Company caused the exposure, and therefore, they've got to pay contribution to us. That's right. There's two different issues here. One is the factual issue. The other is the liability. That's right. And I'm surprised that apparently Crane hasn't sought to get some sort of procedure or limitation or something to preclude the jury being able to assess damages against  Your Honor, we think it's a valid theory of liability. We hope American Cyanamid doesn't prevail on it, but it's a valid theory. We couldn't remove this case if we didn't think it was a valid theory of liability. Hayden's — Go ahead. Well, the Hayden's cite the Sellers case considerably. You didn't mention your principle. You didn't bring it up in the reply brief. But that claim seems to suggest to me that Louisiana law, like the Fourth Circuit's footnote, would not allow this to be a valid cross-claim. Right? Are you familiar with the Sellers case? Yes, Your Honor. Okay. Well, I'll just read from it. If the plaintiff has no right of action against a particular tortfeasor, neither can the remaining tortfeasor have any right of action against the first one for contribution. Why doesn't that resolve the case? I think that the key word is right, Your Honor. I think that the plaintiffs do have a right of action. But you said it does not have any right. Right. I believe that the plaintiffs did have a right of action and do have a right of action against Cranco based on the Navy exposures that they chose not to pursue. I don't believe that that precludes a cross-claim defendant or a third-party defendant that's subrogated to the rights of the plaintiff from exercising those rights however it sees fit. Okay. Well, in Sellers, do you remember Sellers pretty well? Not particularly well. Because in Sellers, they cite Harvey v. Travelers, where the jointfeasor could not seek contribution from another joint tortfeasor who had previously settled with the plaintiff, had made the choice to settle and release. I think, you know, we would say there, Your Honor, if there's been a settlement and a release, there is no further right to proceed against that entity. I believe one of the plaintiffs, one of the cases they cite involved the dismissal of a defendant. If a defendant had been dismissed on the merits or had obtained a binding release, then that changes the equation. But that hasn't happened here. So an intentional relinquishment of a right somehow still remains a right in this case, as distinct from a settlement and release? I think an intentional relinquishment of a right that the court then so orders would make a difference. And what case do you have to draw that nuance? I don't, Your Honor. I don't. We're relying on the propositions of Civil Code Article 1804 and 1805 that there's a subrogation to rights. We don't have a case on point, Your Honor. Have proposed jury instructions been submitted? I'm sorry, Your Honor. I don't know. I don't know. Counsel, you know, you can defend this, you can handle this appeal any way you want, but I'm really surprised you have such lack of knowledge of what's going on in the State trial court. I'm sorry, Your Honor. I was really focused on this. Well, that is the focus of this, is what is happening under Louisiana law in this State trial court that would permit removal to a Federal court. And you're not giving us much help here as to what's really taken place. Well, Your Honor, I think that the question of whether this removal was proper has to focus on the moment the case was removed. Well, but to test the judge's idea that, no, you're protected, it would help us to know what is being claimed in the State trial court now by Crane Company for us to have a way of testing the district judge's theory. Well, Crane Company is certainly claiming that the plaintiff cannot proceed on these Navy allegations against Crane Company. We're not claiming that American Cyanamid can't. We think they have a valid theory of liability, although we're going to contest it. And you're going to contest that if there is exposure in the Navy, you're going to contest that you would owe one dime to American Cyanamid. That's right. Your Honors, if I could turn to just a few other brief issues. The plaintiffs raised in their brief, I think, three other arguments in addition to the — obviously, the central argument is this cross-claim argument. They raised three other arguments. I'd like to address them briefly. The district court did not reach them, but to the extent this court does, I'd like to at least say something. One, they argued that Crane Co. doesn't have a — even if it could remove this cross-claim, it doesn't have a coverable defense or meet the requirements of 1442A1. They relied extensively on the Zeringue District Court opinion. We agree that it's — and that was before Zeringue was decided. I'm not saying they did anything wrong. But we agree that that's absolutely on point on that issue. We incorporated our briefing and arguments from Zeringue on that issue in our briefing here. JUSTICE KENNEDY For your information, in case you're ever back in our courts, you can't incorporate another brief in your brief. It's supposed to be in your brief. We're not supposed to have to read other briefs. MR. CLEMENT Okay. I'm sorry, Your Honor. The second argument — so we think that the court should reject the argument about the coverable federal defense under Zeringue. Plaintiffs additionally argued that the removal wasn't timely, that if the cross-claim was removable, it should have been removed earlier. We believe the court should reject that argument. The cross-claim was filed and served on Cranco on November 17th, and it was removed 13 days later. I think plaintiffs argue, well, you could have seen it coming or you — American Siannum had said things that suggested this was coming, you should have removed earlier. We think that's wrong. Until there's a claim giving rise to a defense, you shouldn't have to remove. The final point, Your Honors, is the plaintiffs have a request in their brief that this Court, if it reverses the district court, that it sever, I believe, the plaintiff's main claims from the cross-claim. I don't think that's an issue the court should reach. It's a discretionary decision by the district court. Unless there are any other questions, Your Honors, I'm going to sit down and wait for rebuttal. All right. Thank you. Good afternoon. I'm Lisa Shirley. I represent the Hayden family. I can answer a few of the questions that the court had in terms of the jury instruction and — Are you assisting in trying the case, Ms. Shirley? I am. No, Your Honor. I'm not personally a trial counsel, but my firm is, and I'm involved in the briefing and that sort of thing. So have proposed jury instructions been presented? No, Your Honor. We haven't yet. Has anyone — has Crane moved to have this cross-claim dismissed against it? Crane — I don't think Crane did. I think another party did, in fact, make a motion to that effect, and the court denied it. So I will say that we are intending in our instructions to ask the — ask for instruction to limit our claims against Crane Co. to only his land-based exposures. We're not seeking any damages based on his exposures in the Navy from Crane Co. or for any other Navy defendant in this case. The disclaimer at issue is — is focused on the Navy exposures. And what we've said is that we are just not seeking damages for those Navy exposures, even though we could — But you're not going to put on any proof at trial about exposure in the Navy, are you? Crane Co.? We are not going to. I probably — Because if you do, that — the district judge has said they can remove. Well, we're not — again, we're not going to be seeking damages. That — No, ma'am. That wasn't my question. Right. I think — You're not going to put on any proof at trial of exposure in the Navy to Crane — that Crane fan or whatever you claimed. That's correct, Your Honor. The plaintiffs won't be doing that. I think evidence of that likely will come. Now, if American Sinema tries to — puts it in, and probably can, what procedure do you see the district court using to preclude any damages being assessed against — assessed against Crane either directly or by contribution? I think eliminating instruction, explaining that plaintiffs aren't seeking damages for any exposures in the Navy. It's entirely possible that the Navy will be assessed some fault in the case, but the plaintiffs won't be able to recover for any fault that's attributed to the Navy exposures. But it is going to be appropriate for there to be some apportionment. In other words, the jury could determine that, for example, 50 percent of whatever damages there may be, the Navy is responsible for. That's correct, Your Honor. They can apportion fault. That's correct. I think this is — this case involves comparative fault and the virile share system, but there will be comparative fault, and I anticipate that the Navy will be — the jury will have the opportunity to apportion fault to the Navy. Do you possibly have any site for a case that describes those procedural mechanisms that would protect Crane? Well, I don't have a Louisiana site. The Joyner case that we discussed in our brief from the District of Maryland, he goes through pretty extensively exactly what would protect the defendant in terms of instructing the jury. And even if damages were awarded for Navy exposures, they would essentially be subtracted from the plaintiffs, any award that the plaintiffs received from the jury. And that's — a similar procedure, I think, would — And you agree that judicial estoppel requires that? I do, Your Honor. I mean, we're very serious about disclaiming those claims. We're not — we have no intention of going back on that. We purposefully limited our claims in this way. From the very beginning, you know, from the first — from when we first filed the case. That was the same description that Judge Fallon employed in the Meyer case, right? Relying on the representations made that the plaintiff wouldn't. Exactly. I mean, if, for some reason, we went back on that, then the case would become removable again. I mean, if there's a Federal jurisdiction, Federal defense, then the case would become removable again. I did want to mention the nature of the cross-claims and those being derivative of our principal demand. We had — you mentioned the Sellers case before, and we had cited that as discussing Louisiana Code of Civil Procedure Article 1111, which to us seems to be the key provision that would govern a contribution claim in these circumstances. And it provides that the defendant can bring — the defendant in the principal action can bring in any person who is or may be liable to him for all or part of the principal demand. And so our point is that our principal demand is limited, and so the contribution claim has to be limited accordingly. I'm not sure how familiar opposing counsel was with that case, but the Court had extended discussion, and it specifically then moved to the notion of even a release being sufficient, which, to me, would work against their argument of a rights-choice distinction. I completely agree, Your Honor. I mean, it was a different — they called — they talked about legal impediments, you know, the res judicata and different immunities and things like that. But I agree with you that there's no real distinction between us giving up the claim now or settling it or — the fact is that we've — we've given up the right, a right that we did have. You know, we're not denying that we did have the right or that he does have those exposures. We're just narrowing our claim. And so the — Now, the — the expert testimony that is going to be offered at trial about this disease, is the expert testimony that this disease starts at some point and then it's augmented by other exposures, or is it — is the expert testimony that it — it stops and resumes later? I mean, what — what is the expert testimony about this disease that's going to perhaps involve Crane Company? That's a — that's a great question. Generally, at least it's the plaintiff's position that all exposures, you know, that reach a certain level, do contribute to cause the disease. So we're not denying that the exposures that Mr. Hayden had in the Navy did contribute. They were part of what caused the — caused the disease. He still has one injury. We're just not seeking damages for the part of his injury that's attributable to those Navy — So how will the jury decide then? What's the jury — what's the verdict form going to look like? I think the jury will have — will get a line for the Navy. They'll be able to attribute fault to the — to the Navy. Exposures generally — I mean, I guess we could parse it out with Crane Company land-based exposures versus Navy exposures if we needed to. But I think the jury will be well informed. It sounds like we're on the same page with Crane Company in terms of not seeking damages for the Navy exposures. So is — is Crane — is the plaintiff at trial going to try to argue that the Navy exposures were extremely limited and almost all — 99 percent of the exposures came from non-Navy exposure? Truthfully, I don't think so. I mean, he had three years of Navy exposure. I don't think we'll necessarily limit them. You know, they're not — that's not our claim. So we'll be concentrating on the more recent exposures, the exposures he had at industrial sites like American Cyanamid. But — so it's not the focus of our claim, but we're not denying that it was a significant portion of his exposure. Whether — how much of it is attributable to that is obviously up to the jury. And you sued 78 plaintiffs — 78 defendants? We originally did. We don't have that many left in the case. Seventeen now? We're down to less than 10 at this point. You had 17 at the pretrial? That sounds — that sounds right, yes, Your Honor. I should have read more carefully. I didn't realize Crane was a defendant also just in the civilian capacity. Correct. So they're still — in that sense, they're in the custody. I don't believe that's stated in the briefs. You know, I apologize. I realize that was not made as clear as it should have been. So they've always been a defendant in the case. And we just had the disclaimer — I mean, they're not the only one that the disclaimer applies to. I think there's multiple defendants, at least a handful that — where, you know, they have Navy equipment that had asbestos in it, but they also provided equipment to the civilian world. That's not uncommon at all. If I could — could I address the timeliness issue? You may. I wanted to just point out that there were three times that Crane Co. was put on notice that — assuming they did have a valid — American Assignment did have a valid cross-claim — that they were — that there would be a Federal defense to that. When they answered our complaint in June of 2015, American Siena Med said that they would be seeking contribution from all defendants named in plaintiff's petition. So you think then that Crane Co. should have run into federal court and removed? Even if American Siena Med later decided, well, we weren't going to name them? We weren't going to name them at all? I think that is a very weak position you're taking in this case, that the minute you think something might happen, you've got to remove it, as opposed to waiting for it to happen. I understand what you're saying, Your Honor. I think that the answer combined with what American Siena Med said in the — in the first removal proceeding, where they made it quite clear that, you know, they straight up said there would be a Federal defense to the cross-claims they were bringing. Well, still, they — didn't they — I don't know why Crane is supposed to remove just on rumor or just on we might do this, as opposed to when it actually happens. That would be a very unwieldy system. I do understand what you're saying. So why did you raise this point? Well, because I think combined with the answer with what American Siena Med said and then Judge Englehart's remand order, it was very clear to them that there were claims for — cross-claims for contribution being raised, and that there was a — you know, that even American Siena Med was saying there was a Federal defense. But never named Crane Co. until it did file its cross-claim against Crane Co. That's correct. But they filed a cross-claim not just against Crane Co., against, you know, several parties. Right. But until they actually named Crane Co., why should Crane Co. have to file a removal petition on what might happen, speculation, instead of what does happen? Well, I think it would be speculation if they hadn't — if American Siena Med hadn't explained their position that there was a Federal defense. I mean, I — you know, I obviously — we could disagree on that. Mighty weak read to build your case on. Well, in truth, you know, our — I don't want to make a bad pun and say it's paper-thin, since there's got to be a paper that alerts them to the need to remove. I think that's a very, very shaky argument. I understand, Your Honor. Our main argument, obviously, is that our — you know, our claim was limited, and so the contribution claim is similarly limited. If you have no other questions, I'll yield my time. Thank you, counsel. Thank you. Rebuttal. Can I ask my name very quickly? I just have two points I wanted to hit. Number one, we talk — we're talking about whether this cross-claim should exist, you know, whether the plaintiffs have the rights or make a choice. But the problem I'm having is it does. I mean, whether it should or not, American Sianem had filed it, served it, and as you heard, someone tried to get it dismissed, and the district judge didn't — or the State court judge didn't dismiss it. I think that's important. Now, wait a minute. You're saying — you're saying Crane Co. moved to have the cross-claim dismissed? Not Crane Co., Your Honor. I believe it was a co-defendant, Westinghouse. I'm sorry, Your Honor. But I just wanted to make the point that it does exist. The second thing, Your Honor, is you talked about — Well, I can only imagine the eruption in State court if plaintiff tries in any way to hold Crane Co. in for damages, for exposure while in the Navy. And that would be a very serious offense by plaintiffs to try that. And I agree, Your Honor. The problem is, and this is what I was going to say, I'm not sure what procedural mechanism there is. Well, you better think of one. I know. But I'm not sure because it's one injury. So how do you — how do you split up one injury? Counsel, you're saying there's no precedent for juries apportioning fault and damages as among tort fees? There's precedent for that, isn't there? You just do a special interrogatory jury instruction? Apportioning fault, yes, Your Honor. There will be a fault apportionment, I believe, in the wrongful death part of the claim. So what's your fear? That in the other part of the claim, the survival claim, that it's subject to the Bureau of Sheriff's System, there's not going to be any apportionment. So I don't know how that this — how it works in that part of the claim, Your Honor. You can't say that there are two sets of damages here and one only comes from the Navy but these other damages were caused by the civilian. You could say, as among all defendants, 20 percent of this defendant, 20, 40 percent of that one, and then you could ask the jury to come up with the total amount of damages suffered by the plaintiff and they could give a number. And then I could subtract the percentage that was attributable to the Navy from the total amount of the damages and I'm done. That doesn't work? In the wrongful death claim, that'll work, Your Honor. In the survival action, I just don't know that you can do that. You don't know that I can, which means you don't know that I can't. Yes, that's true. All right. Unless there are any other questions, Judge, I'm done.  All right. Thank you, counsel.